UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| COMMERCE BANCSHARES, INC., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:14CV1562 JCH |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant American Family Mutual Insurance Company's ("American Family") Motion for Summary Judgment, and Plaintiff Commerce Bancshares, Inc.'s ("Commerce") Motion for Summary Judgment, both filed January 15, 2016. (ECF Nos. 31, 36). The motions are fully briefed and ready for disposition.

## BACKGROUND

Commerce operates bank branches throughout the state of Missouri, including on Jeffco Boulevard in Arnold, Missouri. (Amended Complaint for Breach of Contract (hereinafter "Complaint" or "Compl."), ¶ 6). On or about August 12, 2008, Commerce, through its wholly owned subsidiary, Commerce Bank, entered into a contract with Action Landscaping, Inc. ("Action"). (*Id.*, ¶ 7, and Agreement for Services ("Contract"), attached to Commerce's Complaint as Exh. A). In the Contract, effective September, 2008, through March, 2011, Action agreed to provide the necessary labor, materials and equipment to perform for Commerce at its Arnold location certain landscaping services, as delineated in the Specifications attached to the Contract. (Contract, P. 1). As relevant here, the Specifications provided as follows:

**Commerce's Expectations:**

**Commerce Bank is looking to partner with landscape providers who will provide <u>full</u> service, professional landscape services at our branch locations. We expect you will take full responsibility and "ownership" of the branch, ensuring that it looks well maintained at all times.**

> **I.     Scope of Work**
>
> > Furnish all supervision, labor, material, equipment and transportation required to maintain the Commerce Bank branch landscaping in an attractive, well maintained condition throughout the year, as specified below….
>
> **VII.   Tree and Shrub Care**
>
> <u>Contracted services</u>:   Maintain trees….in a healthy, growing condition by performing all necessary operations, including the following:…
>
> **B.   Pruning**
>   (1)   Trees….
>
> > Evergreen trees shall be thinned out and shaped when necessary to prevent wind and storm damage. The primary pruning of deciduous trees shall be done during the dormant season. Damaged trees or those that constitute health or safety hazards shall be pruned at any time of the year as required.

(Specifications, PP. 1, 3-4). Taken together, the Contract and Specifications required Action to visit the site weekly to perform clean up, and to "maintain a regular systematic inspection routine of the premises to the end that the Services enumerated [in the Specifications] herein shall be performed in a good and workmanlike manner and with all due safety precautions at all times." (*See* Contract, P. 1; Specifications, P. 2).

Pursuant to the Contract, Action agreed to provide "Workman's Compensation, Unemployment Insurance, Public Liability, and Automobile Insurance to limits required by Commerce and other insurance insuring against such risks as shall adequately protect Commerce as set forth herein and/or cover any potential liability arising from the performance of its duties

hereunder." (Contract, P. 2). The procured insurance policy was to list Commerce as an additional insured, and was to be primary and non-contributory. (*Id.*). Finally, the Contract provided as follows with respect to liability for damages: "[Action] agrees to indemnify and hold Commerce harmless from and against any and all claims, damages, liabilities, losses and expenses (including reasonable attorneys' fees, costs and expenses), however caused, and which arise from the commission of a willful or negligent act, or the willful or negligent failure to act, in connection with the performance of its duties hereunder." (*Id.*).

Defendant American Family issued a Business Key Policy ("Policy"), No. 24-X17562-16, with effective dates of September 26, 2008, to September 26, 2009, to Action. (Defendant 's Statement of Uncontested Material Facts ("Defendant's Facts"), ¶ 7 and Policy, attached to Defendant's Facts as Exh. 5). The Commercial General Liability Coverage Form in the Policy provided that "the words 'you' and 'your' refer to the Named Insured[1] shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy….The word 'insured' means any person or organization qualifying as such under Section II—Who is An Insured." (Policy, P. 19). With respect to coverage, the Policy provided in relevant part as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages….
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
> > (2) The "bodily injury" or "property damage" occurs during the policy period.

---

[1] Action is the named insured under the Policy. (Policy, P. 11).

(*Id.*).

The Policy was endorsed with forms IL 75 37 10 00 and CG 20 10 07 04, to add Commerce Bank as an additional insured effective September 26, 2008. (Policy, P. 9). The additional insured endorsement provided as follows:

> A. Section II—Who is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by
>
> 1 Your acts or omissions, or
>
> 2 The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.
>
> B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
>
> This insurance does not apply to "bodily injury" or "property damage" occurring after
>
> > All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed.

(Policy, PP. 46-47).

On or about September 4, 2009, Deborah Borgetti filed a lawsuit in the Circuit Court of Jefferson County, Missouri, against Commerce and other entities. (Lawsuit, attached to Defendant's Facts as Exh. 3). In her suit, Ms. Borgetti alleged that on or about September 27, 2008, she was a passenger riding on the back of a motorcycle traveling north on Jeffco Boulevard, when a vehicle operated by Janet Young turned left from a Taco Bell parking lot near Commerce's branch into traffic on Jeffco Boulevard. (*Id.*, ¶¶ 3, 4, 6). Ms. Borgetti alleged that Ms. Young pulled into the path of the motorcycle, causing it to strike the vehicle driven by Ms.

Young.  (*Id.*, ¶ 7).  As a result, Ms. Borgetti allegedly was thrown from the motorcycle, and suffered serious, severe and permanent injuries.  (*Id.*).  With respect to Commerce, Ms. Borgetti alleged that the property of Commerce's bank branch sits adjacent to a curve in the road on Jeffco Boulevard; that on or about September 27, 2008, there existed a large tree on Commerce's property, that blocked the view of both those traveling northbound around the curve and those exiting the Taco Bell restaurant; that Commerce failed to trim the tree's vegetation which grew too close to the adjoining highway, thereby creating a dangerous condition for the traveling public; that Commerce had a duty to the public passing on Jeffco Boulevard to maintain its property in a reasonably safe condition; that Commerce's failure to trim the vegetation was an unreasonable interference with the common community rights such as public safety and health; that Commerce either created the dangerous condition, or allowed the dangerous condition created by third persons to exist after Commerce knew or should have known about it; and that Commerce's actions resulted in injury to Ms. Borgetti.  (*Id.*, ¶¶ 8-14).  Based on these allegations, Ms. Borgetti lodged claims for nuisance and negligence against Commerce.  (*Id.*, ¶¶ 1-19).  Commerce tendered the lawsuit to its own liability carrier, Zurich American Insurance Company ("Zurich"), who undertook the defense on or about June 21, 2010.  (American Family's Suggestions in Support of Motion for Summary Judgment ("American Family's Memo in Support"), PP. 2-3).

On February 11, 2013, Commerce, through Zurich, tendered its defense of the Borgetti lawsuit to American Family.  (Defendant's Facts, ¶ 10).  In a letter dated March 13, 2013, Mr. Roy D. Mueller, Jr., an attorney for American Family, acknowledged that Commerce was an additional insured under the Policy, but refused the tender and declined to provide a defense and

indemnification to Commerce.  (*Id.*, ¶ 11; Mueller letter, attached to Defendant's Facts, as Exh. 4).

In June, 2013, Commerce settled Ms. Borgetti's claims against it for $100,000. (Defendant's Facts, ¶ 12).[2]  The settlement was paid by Zurich, who now seeks reimbursement of the settlement money, plus attorneys' fees and costs.

Commerce filed its original Complaint for Breach of Contract in this matter on September 11, 2014.  (ECF No. 1).  In the instant Complaint, Commerce alleges American Family's denial of coverage and refusal to defend Commerce in the Borgetti lawsuit amounted to a breach of contract, and further was without justification in the Policy and thus constituted bad faith and a vexatious refusal to pay.  (ECF No. 7).  As relief, Commerce seeks reimbursement of the sums paid in settlement of the Borgetti lawsuit, together with attorneys' fees, costs, expenses and penalties.  (*Id.*).

As noted above, the parties filed competing Motions for Summary Judgment on January 15, 2016, with both sides asserting there exist no genuine issues of material fact and they are entitled to judgment as a matter of law.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The substantive law determines which facts are critical and which are irrelevant.  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  *Anderson v.*

---

[2] The parties have stipulated that the $100,000 payment in settlement of Ms. Borgetti's claims was reasonable.  (Plaintiff's Statement of Undisputed Material Facts, ¶ 27).

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

### I. American Family's Motion For Summary Judgment

In its motion, American Family presents four reasons why it should not be held liable for the Borgetti settlement under the Policy. The Court will address American Family's assertions in turn.

#### A. Additional Insured Status—"Ongoing Operations"

American Family first asserts that Commerce is not entitled to coverage under the Policy because Action was not engaged in "ongoing operations" at the time of Ms. Borgetti's accident. (American Family's Memo in Support, PP. 4-6).[3] As support for this position, American Family notes the additional insured endorsement provided as follows:

---

[3] The parties agree that the phrase "ongoing operations" is not defined in the Policy. (Plaintiff's Statement of Undisputed Material Facts, ¶ 18).

A. Section II—Who is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by

1 Your acts or omissions, or

2 The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after

All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed.

(*Id.*). Based on these provisions, American Family posits that Commerce was an additional insured only when Action was on the premises and doing actual work on behalf of Commerce, not during the entire two and a half year duration of the Contract. (*Id.*).[4]

Under Missouri law, "where a policy is ambiguous it must be construed in favor of the insured, 'to the end that coverage is afforded 'to the full extent that *any fair interpretation* will allow.''" *Mendota Ins. Co. v. Ware*, 348 S.W.3d 68, 74 (Mo. App. 2011), quoting *Crossman v. Yacubovich*, 290 S.W.3d 775, 781 (Mo. App. 2009) (emphasis added; citation omitted).

> Where there is ambiguity, insureds are entitled to a resolution of that ambiguity consistent with their *objective* and *reasonable* expectations as to what coverage would be provided. Not every ambiguity in an insurance policy is resolved favorably to the insured, but only where a reasonable person in the position of the adherent would have expected coverage.

---

[4] There is no dispute that Action was not on Commerce's premises at the time of the accident.

*Id.* (internal quotation marks and citations omitted). Thus, "the question that must be answered is whether [Commerce], by virtue of being an additional insured under [Action's] insurance, expected to be insured for [Ms. Borgetti's] injuries." *Employers Ins. Co. of Wausau v. Harleysville Ins. Co. of New Jersey*, 2008 WL 4066329, at *4 (D. N.J. Aug. 26, 2008).

Upon consideration the Court finds that American Family's argument is unpersuasive, because it improperly focuses on whether, at the time of the accident, Action actively was providing landscaping services at Commerce's bank location. *Employers Ins. Co. of Wausau*, 2008 WL 4066329, at *4. Instead, under the express terms of the Policy the Court finds the proper focus is whether Ms. Borgetti's bodily injury was caused by Action's acts or omissions in the performance of its ongoing operations for Commerce. Returning to the Contract, Action's duties included "maintain[ing] a regular systematic inspection routine of the premises to the end that the Services enumerated [in the Specifications] herein shall be performed in a good and workmanlike manner and with all due safety precautions at all times," and pruning trees that constituted health or safety hazards "at any time of the year as required." (*See* Contract, P. 1; Specifications, P. 4). Under these circumstances, it is clear that even though Ms. Borgetti's accident did not occur while Action was on the premises, it nevertheless arose out of Action's ongoing obligation to provide a safe environment with respect to tree trimming. *Employers Ins. Co. of Wausau*, 2008 WL 4066329, at *5; *see also Sabia Landscaping v. Merchants Mut. Ins. Co.*, 2013 WL 6022129 (E.D. Pa. Nov. 6, 2013) (holding that because the snow removal contract included ongoing and as-needed obligations, the plaintiff had not completed all the work called for in the contract at the completion of its active snow removal). This portion of American Family's Motion for Summary Judgment must therefore be denied.

B.    **Duty To Eliminate Traffic Obstructions**

American Family next asserts it may not be held liable, as the Contract did not require Action to eliminate any potential traffic obstructions from Jeffco Boulevard. (American Family's Memo in Support, P. 6). This assertion is easily disposed of, because as noted above the Contract required Action to "maintain a regular systematic inspection routine of the premises to the end that the Services enumerated [in the Specifications] herein shall be performed in a good and workmanlike manner and with all due safety precautions at all times," and to prune trees that constituted health or safety hazards "at any time of the year as required." (*See* Contract, P. 1; Specifications, P. 4). These obligations were imposed without limitation, and thus the Court finds Action's duties included pruning trees that impaired motorists' sightlines along Jeffco Boulevard.[5] This portion of American Family's motion will therefore be denied.

C. **Duty To Defend**

American Family next asserts the Contract imposed no obligation upon either itself or Action to defend Commerce in the underlying litigation. (American Family's Memo in Support, PP. 6-7). While this may be true, it is the terms of the Policy that imposed the obligation. In other words, because Commerce was an additional insured under the Policy, it was entitled to a defense whenever a claim was made that potentially fell within the Policy's coverage. (*See* Policy, PP. 9, 19 (emphasis added) ("We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. *We will have the right and duty to defend the insured against any 'suit'[6] seeking those damages.*").

---

[5] The Contract did not, as posited by American Family, merely require Action to maintain the health and good looks of the landscaping for Commerce.

[6] "Suit" is defined in the Policy as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (Policy, P. 29).

### D. Excess Coverage

American Family finally asserts that because its coverage was excess over Zurich's liability coverage, it owed no duty to defend or indemnify Commerce until Zurich's limit of liability was exhausted. (American Family's Memo in Support, PP. 7-8). As support for this position, American Family notes the following provision in the Policy:

4. Other Insurance

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:….
>
> b. Excess Insurance
>
> This insurance is excess over….
>
> Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.
>
> When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."

(*Id.*, quoting Policy, P. 26).

In response, Commerce points out that the above provision applies to *Action*, not to Commerce. In other words, substituting "Action" for "you", as appropriate (*see* Policy, P. 19), the quoted provision reads as follows: "This insurance is excess over….Any other primary insurance available to [Action] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [Action] ha[s] been added as an additional insured by attachment of an endorsement." American Family makes no contention that Action is named as an additional insured in the Zurich or any other policy, and thus the applicable Policy provision states that in the absence of a listed exception, American Family's

insurance is primary. (*See* Policy, P. 26 ("This insurance is primary except when b. below applies.")). This portion of American Family's Motion for Summary Judgment will therefore be denied.

### 2    Commerce's Motion For Summary Judgment

#### A.   Settlement And Attorneys' Fees

In its motion, Commerce asserts that because American Family refused to defend and indemnify Commerce per the terms of the Policy, it is entitled to damages equal to the sum it paid to settle Ms. Borgetti's claim, plus the attorneys' fees and expenses that would have been covered had American Family fulfilled its obligations. (Plaintiff's Suggestions in Support of Motion for Summary Judgment ("Commerce's Memo in Support"), P. 13). American Family counters that Commerce is only entitled to expenses and fees incurred after the tender. (Defendant's Suggestions in Opposition to Plaintiff's Motion for Summary Judgment, PP. 3-5).[7]

Upon consideration, the Court agrees that Commerce is entitled to the settlement amount it paid, plus the attorneys' fees and expenses it incurred after Zurich tendered the defense of Commerce to American Family. The Court will grant the parties until **Friday, April 1, 2016**, within which to submit their respective positions with respect to the appropriate amount of fees and expenses.

#### B.   Vexatious Refusal To Pay

Commerce finally asserts that it is entitled to statutory penalties pursuant to Missouri Revised Statute Section 375.420. (Commerce's Memo in Support, P. 14). Section 375.420 provides as follows:

---

[7] American Family also asserts Commerce is entitled to no attorneys' fees because Zurich's counsel was in-house, but the Court rejects this assertion.

> In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Upon consideration, the Court does not find that American Family's refusal to pay was without reasonable cause or excuse, and so Commerce's Motion for Summary Judgment on Count II of its Complaint will be denied.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Commerce Bancshares, Inc.'s Motion for Summary Judgment (ECF No. 36) is **GRANTED** in part, and judgment is entered in Commerce's favor on Count I of its Complaint. Judgment is entered in Defendant American Family's favor on Count II of the Complaint.

**IT IS FURTHER ORDERED** that Defendant American Family Mutual Insurance Company's Motion for Summary Judgment (ECF No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties are granted until **Friday, April 1, 2016**, within which to brief their respective positions on the appropriate amount of attorneys' fees and expenses to be awarded to Commerce.

Dated this 23rd Day of March, 2016.

    /s/ Jean C. Hamilton
    UNITED STATES DISTRICT JUDGE